1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER J. TUNNEL,                              No.  2:14-cv-1334 AC

12                  Plaintiff,

13          v.                                      ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI")

21   under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

22          For the reasons that follow, the court will grant plaintiff's motion for summary judgment,

23   deny the Commissioner's cross-motion for summary judgment, and remand this matter to the

24   _____

25   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
26   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
     Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
27   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
     children, whose income and assets fall below specified levels . . .").
28

                                                      1

Commissioner for the immediate calculation and award of benefits to plaintiff.  In summary, the decision of the Administrative Law Judge ("ALJ") makes no mention of the January 28, 2011 opinion offered by plaintiff's treating psychotherapist, Marilyn Perry, Ph.D., which found that plaintiff had three impairments that met the severity level of the Listing of Impairments, 20 C.F.R. Pt.404, Supt. P, App. 1 ("the Listings").[2]  See AR 128-35 (Exh. 9B).  The decision also improperly rejected the July 16, 2012 opinion offered by plaintiff's treating psychiatrist, Pamela Martell, M.D., which found that plaintiff had two impairments that met the Listings.[3]  See AR 415-22 (Exh. 15F).  Finally, the decision improperly rejected the July 6, 2012 opinion offered by an examining psychologist, Tamar Wishnatzky, Ed.D., which found on the basis of a two-day examination and a battery of clinical tests that plaintiff had one impairment that met the Listings.[4] See AR 432-39 (Exh. 18F).  Crediting those opinions as a matter of law, plaintiff is disabled.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on June 16, 2010[5] and for SSI on July 14, 2010.[6]  Administrative Record ("AR") 157-58 (Exh. 1D), 161-64 (Exh. 2D).[7]  Both applications alleged a disability onset date of July 1, 2006.  AR 157, 161.  The applications were disapproved initially, AR 103-08

---

[2]  Affective Disorders (Listings 12.04, both Depressive Syndrome and Manic Syndrome), Anxiety-Related Disorders (Listings 12.06), and Personality Disorders (Listings 12.08) (AR 131, 132-33, 134), together with "marked" limitations in activities of daily living and social functioning, and "frequent" deficiencies of concentration, persistence or pace (AR 135).
[3]  Affective Disorders (Listings 12.04, Depressive Syndrome) and Anxiety-Related Disorders (Listings 12.06) (AR 418, 419-20), together with "marked" limitations in social functioning (AR 417), "constant" deficiencies in concentration, persistence or pace, and "repeated" or "continual" episodes of deterioration or decompensation (AR 422).
[4]  Affective Disorders (Listings 12.04, both Depressive Syndrome and Manic Syndrome) (AR 435), together with "marked" limitations in activities of daily living and social functioning, "frequent" deficiencies of concentration, persistence or pace, and "continual" episodes of deterioration or decompensation (AR 439).
[5]  This was the "protective" filing date.  AR 183.  The official filing date was July 14, 2010. AR 157.  The "protective" filing date is the date an applicant first lets the Commissioner know that he intends to apply for SSI benefits – a date occurring before the official filing date – so long as certain specified conditions are met.  See 20 C.F.R. §§ 416.340 (written statement) & 416.345 (oral inquiry); see Wright v. Sullivan, 900 F.2d 675, 684 (3rd Cir. 1990) ("[t]he regulations provide that a written application for supplemental security income benefits will be retroactively dated to that of an earlier oral inquiry").
[6]  According to the Administrative Record, plaintiff again applied for SSI on February 7, 2012, alleging an onset date of July 1, 2006.  AR 165-73.  However, neither side mentions this application, so the court will not address it.
[7]  The AR is electronically filed at ECF Nos. 10-3 to 10-9 (AR 1 to AR 469).

1   (Exh. 1B), and on reconsideration, AR 112-17 (Exh. 5B).  On January 17, 2012, plaintiff

2   requested a hearing before an administrative law judge ("ALJ"), to challenge the disapproval.

3   AR 119-24 (Exhs. 6B, 7B).

4        On July 25, 2012, ALJ Mark C. Ramsey presided over the hearing.  AR 47-92 (transcript

5   of hearing).  At this hearing, plaintiff was represented by attorney Gail Stassinos.  AR 43.

6   Plaintiff testified at the hearing.  AR 45-91.  The ALJ asked plaintiff's counsel to provide the

7   medical records from Dr. Perry and Dr. Martell.  AR 81.  Those records were then made a part of

8   the record.  See AR 128-35 (Exh. 9B) (Dr. Perry), 415-22 (Exh. 15F) (Dr. Martell).

9        On September 18, 2012, the ALJ issued an unfavorable decision, finding plaintiff "not

10  disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and

11  Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 20-36 (decision

12  and exhibit list).  On April 15, 2014, after receiving additional exhibits to be made a part of the

13  administrative record, the Appeals Council denied plaintiff's request for review, leaving the

14  ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision

15  and additional exhibit list).

16       Plaintiff filed this action on June 2, 2014.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).

17  In due course, plaintiff was granted leave to proceed in forma pauperis, the parties consented to

18  the jurisdiction of the magistrate judge, the Commissioner answered and filed the administrative

19  record, and the parties filed and fully briefed the pending cross-motions for summary judgment.

20  ECF Nos. 3, 6, 7, 9, 10, 18, 19.

21                              II.  FACTUAL BACKGROUND

22       The claimant was born on March 18, 1968 and accordingly was 38 years old, which is

23  defined as a younger individual age 18-49, on the alleged disability onset date.  AR 31.  Plaintiff

24  has a high school education, and can communicate in English.  AR 31.

25                              III.  LEGAL STANDARDS

26       The Commissioner's decision that a claimant is not disabled will be upheld "if it is

27  supported by substantial evidence and if the Commissioner applied the correct legal standards."

28  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

1   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

2   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

3          Substantial evidence is "more than a mere scintilla," but "may be less than a

4   preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

5   evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

6   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

7   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

8   suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

9   Although this court cannot substitute its discretion for that of the Commissioner, the court

10  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

11  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

12  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

13  court must consider both evidence that supports and evidence that detracts from the ALJ's

14  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

15         "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

17  Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

19  278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

20  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

21  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

22  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

23  evidence that the ALJ did not discuss").

24         The court will not reverse the Commissioner's decision if it is based on harmless error,

25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26  ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

27  (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

28  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  <u>Hill v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

> 2.  [Step 1] The claimant has not engaged in substantial gainful activity since July 1, 2006, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)

> 3.  [Step 2] The claimant has the following severe impairments: Asperger's disorder, depressive disorder not otherwise stated and panic disorder (20 CFR 404.1520(c) and 416.920(c)).

> 4.  [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, and 12.06.

> 5. [Preparation for Step 4]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple unskilled work without frequent co-worker or public contact.

> 6.  [Step 4] The claimant is capable of performing past relevant work as a janitor and store maintenance job at an antique shop. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

> 7.  [Step 5, alternate finding] The claimant was born on March 18, 1968 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job

skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

8. [Step 5, alternate, continued] In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404. 1569(a), 416.969, and 416.969(a)).

9. [Step 5, alternate, continued] The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. This finding is supported by SSR 85-15.

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 22-32.

The ALJ concluded that "the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act," and "the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." AR 413.

## VI.  ANALYSIS

Plaintiff argues that the ALJ erred in that he: (1) failed to consider or discuss plaintiff's Personality Disorder and his Bipolar Disorder at Step 2; (2) failed to call a medical expert at the hearing; (3) failed to consider whether plaintiff's Asperger's Syndrome met or equaled Listing 12.10; (4) failed to find that plaintiff's mental impairments met or equaled Listings 12.04, 12.06, 12.08 and 12.10, despite findings of marked limitations by all the doctors who examined plaintiff; (5) found plaintiff able to do Past Relevant Work; (6) failed to obtain the testimony of a vocational expert; and (7) found plaintiff not to be credible.

The court finds that the ALJ erred in finding that plaintiff's mental impairments did not meet or equal Listings 12.04, 12.06 and 12.08, warranting a remand for calculation and payment of benefits to plaintiff. Accordingly, the remainder of plaintiff's arguments are not addressed.

////

7

1      A. <u>Step 2</u>

2          At Step 2, the ALJ identifies "Asperger's disorder, depressive disorder not otherwise

3      specified and panic disorder" as plaintiff's "severe impairments."  AR 22.  The ALJ does not

4      identify plaintiff's alleged Bipolar Disorder or his Personality Disorder as severe impairments.

5      Plaintiff argues that these omissions constitute error.

6          However, even if these omissions constituted legal error, they could only have prejudiced

7      plaintiff in Step 3, or in the RFC steps – Steps 4 and 5.  That is because Step 2 was resolved in

8      plaintiff's favor, inasmuch as the ALJ found that plaintiff had severe impairments (apart from

9      Bipolar Disorder and Personality Disorder), and therefore was entitled to have all of his

10     limitations (including those caused by Bipolar and Personality Disorders) considered in the

11     subsequent Steps.  <u>Stout</u>, 454 F.3d at 1055 ("in <u>Burch</u>, after '[a]ssuming without deciding' the

12     ALJ erred in finding the claimant's obesity was not a 'severe' impairment, we held the assumptive

13     error did not require reversal because the step was 'resolved in [the claimant's] favor'") (quoting

14     <u>Burch</u>, 400 F.3d at 682).

15     B. <u>Step 3</u>

16         At Step 3, the ALJ found that plaintiff had no impairment or combination of impairments

17     that met or equaled the severity of one of the Listings.  AR 23.  Plaintiff persuasively argues that

18     this was error.

19         In order for one of the impairments at issue here to meet the severity level of one of the

20     impairments in the Listings, it must meet the requirements set forth in the "A" *and* "B" series of

21     the respective Listing.  <u>See</u> Listings 12.04A, B (Affective Disorders), 12.06A, B (Anxiety Related

22     Disorders), 12.08A, B (Personality Disorders), 12.10A, B (Autistic Disorders and other Pervasive

23     Developmental Disorders).[8]  To meet the requirements of the "B" series, plaintiff would need to

24     have at least two of the following: (1) marked restriction of activities of daily living; (2) marked

25     difficulties in maintaining social functioning; (3) marked difficulties in maintaining

26     _____

27     [8]  Alternatively, for Listing 12.04, only series "C" need be shown, and as an alternative for
       Listing 12.06, series "A" and "C" can be shown.  The ALJ found that plaintiff did not satisfy the
       "C" series, and plaintiff does not challenge this finding.

28

1  concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended

2  duration.  See Listings 12.04B, 12.06B, 12.08B, 12.10B.

3  The ALJ found that plaintiff did not satisfy *any* of the requirements of the "B" series, and

4  therefore concluded that plaintiff's impairments did not meet the severity level of the Listings.

5  Rather, he determined that: (1) "[i]n activities of daily living, the claimant has mild restriction;"

6  (2) "[i]n social functioning, the claimant has moderate difficulties;" (3) "[w]ith regard to

7  concentration, persistence or pace, the claimant has moderate difficulties; "and (4) "the claimant

8  has experienced no episodes of decompensation, which have been of extended duration."

9  AR 23-24.  In reaching this conclusion, the ALJ rejected the contrary opinions of both of

10  plaintiff's treating physicians, and that of an examining physician.[9]

11  For the reasons that follow, rejection of these doctors' opinions was error.  For the same

12  reasons, the ALJ's finding that plaintiff did not meet or equal the Listings was unsupported by

13  substantial evidence.

14  1. Treating and examining physicians

15  "If a treating physician's opinion 'is well-supported by medically acceptable clinical and

16  laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

17  [the] case record, [it will be given] controlling weight.'"  Orn, 495 F.3d at 631 (alterations in

18  original) (quoting 20 C.F.R. § 404.1527(d)(2)).  Even if the opinion is not supported in this way,

19  or is "'inconsistent with the other substantial evidence'" in the record, it is "'still entitled to

20  deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527."  Id.

---

21  [9]  Indeed, the ALJ rejected, in whole or in part, every single medical opinion offered in this case:
22  those of Drs. Perry, Martel and Wishnatzky; that of the other examining physician, Barry N.
    Finkel, Ph.D. (assessment of "marked" restrictions in social functioning rejected); and the two
23  non-examining physicians, psychiatrist Kevin Gregg, M.D. (RFC for "non-public" work
    rejected), and psychologist Cory A. Brown, Psy.D. (rejected as "superseded" by Dr. Gregg's
24  opinion).  It appears from the record as a whole, including the transcript of the hearing and the
    ALJ's written findings, that the ALJ relied primarily on his own judgment about plaintiff's level
25  of ability, and cherry-picked the items of evidence that supported his judgment while rejecting all
    of the medical opinions finding marked limitations.  An ALJ may not "succumb to the temptation
26  to play doctor" or "substitute his own judgment for competent medical opinion."  Banks v.
27  Barnhart,434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (citations omitted).  In any event, the court
    need only address the rejections occurring at Step 3.

28

1   at 631-32 (quoting SSR 96-2p at 4).

2         "To reject an uncontradicted opinion of a treating physician, the ALJ must provide 'clear

3   and convincing reasons that are supported by substantial evidence.'"  Ghanim v. Colvin, 763 F.3d

4   1154, 1161 (9th Cir. 2014) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

5   "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may

6   not reject this opinion without providing 'specific and legitimate reasons' supported by

7   substantial evidence in the record for so doing.'"  Lester v. Chater, 81 F.3d 821, 830 (9th

8   Cir. 1995) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

9         "As is the case with the opinion of a treating physician, the Commissioner must provide

10  'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining

11  physician.  . . . [Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)].  And like the opinion of a

12  treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can

13  only be rejected for specific and legitimate reasons that are supported by substantial evidence in

14  the record."  Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th

15  Cir. 1995)).

16        It is not necessary in this case to determine whether the rejected opinions are most

17  properly characterized as contradicted or uncontradicted.[10]  Whether contradicted or not, the

18  rejection of a treating or examining doctor's opinion must be supported by "substantial evidence

19  in the record," and by "clear and convincing" or "specific and legitimate" reasons.  However, as

20  discussed below, the ALJ's rejection of these opinions is not supported by "substantial evidence,"

21  nor by "convincing," or even "legitimate" reasons.

22                    a.  Marilyn L. Perry, Ph.D., treating marriage and family therapist

23        On May 14, 2010, Marilyn L. Perry, Ph.D., plaintiff's treating therapist, conducted an

24  assessment of plaintiff, and diagnosed him with Autism Spectrum Disorder.  AR 136-39

25  (Exh. 9B);[11] see Listings 12.10.  Dr. Perry noted that plaintiff had been undiagnosed and

26  _____

27  [10]  The ALJ implies that these opinions were contradicted by the opinions of Drs. Finkel, Gregg and Brown.
    [11]  The assessment is duplicated at AR 342-45 (Exh. 4F).

28

1   untreated until then.  AR 139.  On September 16, 2010, Dr. Perry completed a Mental Disorder

2   Questionnaire Form.  AR 337-41 (Exh. 4F).  Although this form provided space to describe

3   plaintiff's "Current Level of Functioning," Dr. Perry did not rate the severity of plaintiff's

4   impairments in the formal language of the Listings.[12]

5       A few months later, however, on January 28, 2011, Dr. Perry completed a Psychiatric

6   Documentation Form (AR 128-35 (Exh. 9B)), in which she diagnosed plaintiff with Affective

7   Disorders, Anxiety Related Disorders, and Personality Disorders.  See Listings 12.04, 12.06,

8   12.08.  Dr. Perry also made findings about the severity of these impairments.  Specifically,

9   Dr. Perry found that: (1) plaintiff's Affective Disorders were characterized by 8 out of the 9 traits

10  the Listings identify for Depressive Syndrome (only 4 are required to meet the severity level of

11  the "A" series for this disorder), and 6 of the 8 traits identified for Manic Syndrome (only 3 are

12  required) (AR 131; see Listings 12.04A); plaintiff's Anxiety Related Disorders were

13  characterized by all 5 of the traits identified by the Listings (only 1 is required) (AR 133; see

14  Listings 12.06A); and plaintiff's Personality Disorders were characterized by 4 of the 6 traits

15  identified by the Listings (only 1 is required) (AR 134; see Listings 12.08A).

16      On the same form, Dr. Perry assessed plaintiff's functional capacities in light of the above

17  impairments.  Dr. Perry found that plaintiff had "marked" restrictions in his activities of daily

18  living,[13] "marked" difficulties in maintaining social functioning, "frequent" deficiencies of

19

20  [12]  For example, writing informally about activities of daily living, Dr. Perry states that plaintiff
    "can take care of personal affairs – shopping is difficult . . .."  AR 339.  Under Social
21  Functioning, Dr. Perry writes "not difficult," referring to family members, but that plaintiff "can
    yell & not realize he is yelling."  AR 340.  For Concentration and Task Completion, Dr. Perry
22  writes "concentration is bad . . .."  AR 340.  At the hearing, the ALJ dismissed the form as "just
    forms that are filled out," and not "medical records."  See AR 78-79.
23  [13]  The ALJ states that Dr. Perry opined that "the claimant is able to perform activities of daily
    living."  AR 29.  That is not so.  In her January 28, 2011 assessment, Dr. Perry rates plaintiff as
24  having "Marked" restrictions in the activities of daily living.  AR 135 (Exh. 9B).  The ALJ
    decision ignores this opinion in its entirety.  The ALJ does cite Dr. Perry's May 14, 2010
25  informal opinion (Exh. 4F), but that opinion cannot be interpreted to state simply that plaintiff is
    able to perform activities of daily living.  In that opinion, Dr. Perry wrote that plaintiff "can take
26  care of person[al] affairs – shopping is difficult – he will go to grocery store late at night when
    few pop. are around)[,] [h]is life is more restricted now."  AR 339.  However, there is no evidence
27  that Dr. Perry concluded from this that plaintiff is able to perform activities of daily living.
    Rather, the evidence shows that a few months later she incorporated her observations into the
    Psychiatric Documentation Form, finding that plaintiff had "marked" restrictions in that area.
28

11

1  concentration, persistence or pace, and "repeated" episodes of deterioration or decompensation.

2  AR 135; see Listings 12.04B, 12.06B, 12.08B.

3                              b.  Pamela Martell, M.D., treating psychiatrist

4         Dr. Martell began treating plaintiff on December 10, 2010, and continued to treat him at

5  least until July 17, 2012, when she wrote a report on plaintiff's condition, and completed a

6  Psychiatric Documentation Form.  AR 413 (Exh. 14F), 415-22 (Exh. 15F).  In her report,

7  Dr. Martell diagnosed plaintiff with "Autism Spectrum Disorder (Asperger's Syndrome)," and

8  generalized Anxiety Disorder.  AR 413.  Dr. Martell noted that plaintiff "continues to work with

9  Dr. Marilyn Perry, a clinical psychologist."  AR 413.

10         In the Psychiatric Documentation Form, Dr. Martell diagnoses plaintiff with Affective

11  Disorders and Anxiety Related Disorders.  AR 418, 419-20.  In assessing the severity of these

12  disorders, Dr. Martell found that: (1) plaintiff's Affective Disorders are characterized by 7 of the

13  9 traits identified by the "A" series of the Listings for this disorder (only 4 are required to meet

14  the severity level of the "A" series) (AR 418); and (2) plaintiff's Anxiety Disorders are

15  characterized by 4 out of the 5 traits identified by the Listings (only 1 is required) (AR 419-20).

16         In assessing plaintiff's functional limitations in light of these impairments, Dr. Martell

17  found that plaintiff had "marked" to "extreme" difficulties in maintaining social functioning,

18  "constant" deficiencies of concentration, persistence or pace, and "repeated" or "continual"

19  episodes of deterioration or decompensation.  AR 422.

20                              c.  Tamar Wishnatzky, Ed.D, examining psychologist

21         On March 19 & 20, 2012, Dr. Wishnatzky conducted a two-day examination of plaintiff,

22  including a battery of tests, in order "to assess his social and emotional functioning."  AR 441.

23  On July 6, 2012, Dr. Wishnatzky wrote an exhaustive thirteen-page report of her findings, and

24  completed a Psychiatric Documentation Form.  AR 432-52 (Exhs. 18F, 19F).  In her report,

25  Dr. Wishnatzky diagnosed plaintiff with Asperger's Disorder and Bipolar Disorder, NOS (not

26  otherwise specified).  AR 452.

27         In the Psychiatric Documentation Form, Dr. Wishnatzky diagnoses plaintiff with

28  Affective Disorders (which includes Bipolar Disorder where, as here, both Manic and Depressive

1    Syndromes are present).  AR 435.  In opining on the severity of the Affective Disorder,

2    Dr. Martell states that plaintiff's Affective Disorders were characterized by: (1) 6 out of the 9

3    traits the Listings identify for Depressive Syndrome (only 4 are required to meet the severity level

4    of the "A" series for this syndrome); (2) 4 of the 8 traits identified for Manic Syndrome (only 3

5    are required); and (3) the traits identified for Bipolar Disorder (AR 435; see Listings 12.04A).

6         In assessing plaintiff's functional limitations in light of these impairments,

7    Dr. Wishnatzky found that plaintiff had "marked" restriction in activities of daily living,

8    "marked" difficulties in maintaining social functioning, "frequent" deficiencies of concentration,

9    persistence or pace, and "continual" episodes of deterioration or decompensation.  AR 439.

10                   2.  The ALJ completely ignored Dr. Perry's treating physician opinion

11        The ALJ completely ignored Dr. Perry's January 28, 2011 treating physician opinion,

12   located at Exhibit 9B (AR 128-35), without even mentioning it.[14]  Dr. Perry was plaintiff's

13   treating therapist who saw and treated plaintiff from April 2010 at least through the date of the

14   hearing in July 2012.  AR 78 (at July 25, 2012 hearing, plaintiff testifies, "I still see her

15   [Dr. Perry] now"), 341 (Exh. 4F) (plaintiff sees Dr. Perry "once every 2 weeks" from April 1,

16   2010 through the date of Dr. Perry's questionnaire, September 16, 2010), 413 (on July 17, 2012,

17   Dr. Martell notes that plaintiff "continues to work with Dr. Marilyn Perry, a clinical

18   psychologist").  Instead, the ALJ addressed only Dr. Perry's September 16, 2010 Mental

19   Disorders Questionnaire Form (and May 14, 2010 Asperger's assessment), located at Exhibit 4F

20   (AR 337-45), even though he had dismissed the form at the hearing as "just forms that are filled

21   out," and not "medical records."  See AR 78-79.

22        It was legal error for the ALJ to completely ignore the treating physician's opinion.[15]

23   _____

24   [14]  Plaintiff does not expressly argue that the ALJ ignored Dr. Perry's January 28, 2011 opinion
     (Exh. 9B).  Nevertheless, the court finds that plaintiff properly raised the claim of error when he
     argued that the ALJ "did not address the basis" of Dr. Perry's opinion that plaintiff met the
25   Listings.  See Plaintiff's Motion at 21-23.
     [15]  Although it was error, the ALJ's failure to notice this opinion is perhaps understandable.  The
26   ALJs have a very large docket of cases to manage, so it is perhaps not that surprising that a
     critical treating physician's report could be overlooked.  See Association of Administrative Law
27   Judges v. Colvin, 777 F.3d 402, 403 (7th Cir. 2015) ("[T]he Social Security Administration's
     chief administrative law judge issued a directive setting as a 'goal' for the administrative law
28   (continued…)

1   Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("[b]ecause a court must give 'specific

2   and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly

3   that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without

4   even mentioning them") (quoting Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014)).

5        Harmless error analysis applies to the ALJ's total failure to consider the treating doctor's

6   opinion.  Marsh, 792 F.3d at 1173 (applying harmless error analysis where "[t]he ALJ's decision

7   denying Marsh disability benefits nowhere mentions Dr. Betat [the treating physician] or his

8   SOAP notes").[16]  The Commissioner, however, does not argue that the error was harmless.  Even

9   though the Commissioner acknowledges the existence of Dr. Perry's January 28, 2011 opinion

10  (Exhibit 9B),[17] she makes no reference to the ALJ's failure to mention it.  Instead, after weaving

11  references to Exhibit 9B in with references to Dr. Perry's informal views in the questionnaire,

12  Exhibit 4F, the Commissioner states that the ALJ properly gave "some weight" to "her opinion,"

13  see Defendant's Motion at 13, without acknowledging that in fact the ALJ gave *no weight* to

14  Dr. Perry's January 28, 2011 opinion (Exh. 9B), inasmuch as he completely ignored it.

15       The ALJ's failure to consider Dr. Perry's opinion was not harmless.  As discussed above,

16  the ALJ's decision directly contradicts Dr. Perry's assessments of the severity of plaintiff's

17  impairments on every point.  Thus, it would be impossible to credit Dr. Perry's opinion and still

18  find, as the ALJ did, that plaintiff was not disabled.  See Marsh, 792 F.3d at 1173 ("[A] reviewing

19  court cannot consider [an] error harmless unless it can confidently conclude that no reasonable

20  ALJ, when fully crediting the testimony, could have reached a different disability

21  determination").  Moreover, because the Commissioner does not argue that the error was

22  _____

23  judges that each one 'manage their docket in such a way that they will be able to issue 500-700 legally sufficient decisions each year'"); Shapiro v. Social Sec. Admin., ___ F.3d ___, 2015 WL 5102426 at *1, 2015 U.S. App. LEXIS 15438 at *3 (Fed. Cir. September 1, 2015) (same).

24  [16]  "We reject the idea that not mentioning a treating source's medical opinion precludes use of

25  harmless error doctrine, but at the same time, because our law requires 'specific and legitimate reasons that are supported by substantial evidence' for rejecting a treating source's medical opinion, that precedent surely implies that an ALJ must discuss the relevant views of a treating

26  source."  Marsh, 792 F.3d at 1173.

27  [17]  See Defendant's Motion at 5-6 (specifically referring to the "January 2011 check-the-box psychiatric assessment" of Dr. Perry), 8-9 (same), and 14 (referring to Dr. Perry's finding at AR 135 in Exh. 9B, that "Plaintiff had marked difficulties in completing tasks").

28

harmless, or even expressly acknowledge that the error occurred, the court would be forced to speculate as to the reasons why it would be harmless in this case.

The ALJ's reasons for his wholesale rejection of the opinions of Dr. Martell (treating psychiatrist), Dr. Wishnatzky (examining psychologist), and Dr. Cory A. Brown (consulting psychologist, see below) – and the partial rejection of the opinions of Dr. Finkel (examining psychologist) and Dr. Kevin Gregg (consulting psychiatrist, see below) – do not apply to Dr. Perry.  Dr. Perry, who saw plaintiff every other week for at least three years, and who assessed plaintiff for Autism Spectrum Disorder, speaks to plaintiff's issues in a way the other doctors could not.

Dr. Perry addresses plaintiff's educational achievements, noting that these achievements resulted, in part, from his reaching out "to the disabled students office," and receiving tutoring, along with "a lot of hard work."  AR 137.  As for plaintiff's other abilities and limitations, Dr. Perry notes that plaintiff "can take care of person[al] affairs," and has a "not difficult" relationship with his mother.  AR 339-40.  But she also points out that "shopping is difficult," that "his life is more restricted," that he avoids places where there are people around, that he yells without realizing he is yelling, has difficulty adapting to minor stresses, has "bad" concentration. AR 339-40.  Moreover, these findings are not the result of a one-time examination of plaintiff, or even of very occasional visits, such as those by Dr. Wishnatzky and Dr. Martell.  Rather, they arise from Dr. Perry's seeing plaintiff every other week for at least three years of treatment.

Although the ALJ was aware of these findings by Dr. Perry, it appears that he was unaware that Dr. Perry ultimately considered these and other findings in concluding that plaintiff has "marked" restrictions in his activities of daily living and social functioning, and frequent deficiencies in concentration.[18]  The court cannot find this error harmless, because it has no way to know what difference, if any, it would have made to the ALJ's analysis if he had known that

---

[18]  If the ALJ was aware of these conclusions, he makes no mention of them.  Indeed, he appears to indicate that he was unaware of them when he states: "On the other hand, Dr. Perry did not identify specific limitation(s) in other work-related abilities.  Accordingly, the undersigned is unable to fully utilize this opinion in formulating a residual functional capacity."  AR 29.

1    the very same evidence that he interpreted as leaving plaintiff with only mild or moderate

2    limitations, and therefore having non-severe impairments, led Dr. Perry to the contrary conclusion

3    that plaintiff had "marked" impairments, and that he easily met the severity levels of Listings

4    12.04A & B, 12.06A & B, and 12.08A & B.

5                  3.  The ALJ improperly rejected Dr. Martell and Dr. Wishnatzky's opinions

6         For the reasons set forth below, the ALJ improperly rejected the opinions of Dr. Martell

7    and Dr. Wishnatzky.

8                              a.  Educational achievement

9         The ALJ rejected the opinions of Dr. Martell and Dr. Wishnatzky because, he says, they

10   "contrast sharply" with plaintiff's educational achievements.  AR 30, 31.

11        Certainly, considering all of plaintiff's diagnosed disorders and limitations, it is a

12   significant achievement that he obtained his GED, obtained an Associates Degree from

13   Sacramento City College, and attended American River College and Chico State University,

14   passing all of his courses.  However, the ALJ completely ignores the way plaintiff was able to

15   manage this, and the accommodations plaintiff has been granted along the way.  Thus, plaintiff

16   testified that in order to get passing grades, he obtained accommodations and was granted "longer

17   time" to take tests.  AR 75.  His uncontrollable outbursts – which he is not even aware of until he

18   is in the middle of them – caused him to yell at his residential adviser and to make "some very

19   inappropriate comments" to his teacher, yet he was not expelled from school for such behavior.

20   AR 76.  In addition, his anxiety would cause him to leave class abruptly, and again, he was not

21   thrown out of school for it.  AR 86.

22        All of these things were, apparently, not obstacles to plaintiff's being able to continue on

23   in school.  However, they are not necessarily behaviors that will enable plaintiff to obtain and

24   maintain gainful employment.  See Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).[19]

25            [19]  "With respect to the claimant's daily activities, the ALJ may reject a claimant's
     symptom testimony if the claimant is able to spend a substantial part of her day
26       performing household chores or other activities that are transferable to a work setting. . . .
     [T]his line of reasoning has its limits.  The Social Security Act does not require that
27       claimants be utterly incapacitated to be eligible for benefits, and many home activities
28   (continued…)

1   Moreover, the ALJ did not call a vocational expert to ask whether such behaviors would allow, or

2   preclude, gainful employment.  In short, plaintiff's educational achievement is no basis for

3   rejecting the treating and examining doctors' assessments that he is markedly impaired in

4   activities of daily living and social functioning.  Accord, Bjornson v. Astrue, 671 F.3d 640, 647

5   (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-

6   time job are that a person has more flexibility in scheduling the former than the latter, can get

7   help from other persons . . . , and is not held to a minimum standard of performance, as she would

8   be by an employer.  The failure to recognize these differences is a recurrent, and deplorable,

9   feature of opinions by administrative law judges in social security disability cases.") (quoted with

10   approval by Garrison, 759 F.3d at 1016).

11        Plaintiff's educational achievements do not provide a proper basis for rejecting the

12   opinions of Dr. Martell and Dr. Wishnatzky.

13                b.  Testimony and objective evidence

14        The ALJ also rejected the opinions of Dr. Martell and Dr. Wishnatzky because their

15   opinions "sharply contrasted" with plaintiff's own testimony about his activities.  Specifically, he

16   cites plaintiff's testimony to conclude that plaintiff "is capable of performing personal care tasks,

17   preparing meals, shopping in stores, managing funds, driving a car, playing computer games,

18   attending church, eating in restaurants and visiting with others."  AR 27.  However, the ALJ's

19   conclusion is reached by isolating snippets of testimony and pieces of evidence that indicate

20   plaintiff has *some* capabilities in an area, while entirely ignoring the remainder of the evidence

21   which sharply restricts or curtails the listed abilities.

22        For example, the ALJ cites the report of an examining physician, Dr. Finkel, who stated

23   ——————————————

24          may not be easily transferable to a work environment where it might be impossible to rest
             periodically or take medication."

25

26   Id. (citation omitted).  The same reasoning applies here.  Plaintiff's ability to perform some
   activities, including educational activities with special accommodation, does not mean that he is

27   able to perform in the workplace.  The "sharp contrast" that the ALJ drew between the medical
   opinions and plaintiff's educational achievements is thus an apples and oranges contrast.

28

1   after meeting plaintiff once that plaintiff grooms himself appropriately.  However, he ignores the

2   observations of the treating psychiatrist, who treated plaintiff from 2010 until the hearing, that

3   plaintiff "forgets to change clothes, shower," is "[a]verse to change," [f]eels compelled to wear

4   same clothes, over and over," "[r]eports changing his diet into rituals with food," and "[d]entition

5   very poor."  AR 417.  Similarly, the ALJ notes that plaintiff testified that he went shopping, but

6   fails to mention the observation that he is markedly impaired in his ability to do so, inasmuch as

7   he, for example, yells as grocery baggers for doing their jobs.  AR 353 (examining physician,

8   Dr. Finkel).

9        In addition, the ALJ's interpretation of plaintiff's testimony finds more capability than the

10  record reflects or can reasonably be inferred.  For example, the ALJ says that plaintiff testified

11  that he does his own cooking.  However, when asked whether he cooked for himself, plaintiff in

12  fact testified:

13
                    I did lots of like, you know, blender drinks. I didn't cook like – I
                    didn't like cook with pots and stuff.  I'd like mix, you know, things
14                  up in the blender or I'd go and get fast food.  I really don't do a lot
                    of cooking."
15

16  AR 55.  The ALJ says that plaintiff testified that he shopped in stores.  But he does not mention

17  how "difficult" it was for him, or the fact that he had to limit the times of day when he could do

18  it, and that he sometimes lost control of himself while doing it, uncontrollably yelling at store

19  personnel for doing their jobs.

20       Meanwhile, the ALJ makes no mention of plaintiff's testimony or self-assessments that

21  tend to show his marked limitations in the activities of daily life.  For example, there is no

22  mention of plaintiff's complete inability to keep his home environment clean, his tendency to

23  wear the same clothes over and over, not to bathe and not to brush his teeth.  See, e.g., AR 53

24  (testimony that plaintiff never vacuumed the carpets, mopped the floor, or cleaned the bathtub or

25  shower), 197 ("Other people tell me that my room is a mess.  I don't notice it.").

26       Plaintiff's ability to perform some daily activities and to engage in some social

27  relationships does not contradict his testimony regarding his limitations, nor the medical opinions

28  finding "marked" limitations.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("A

1  claimant need not be completely incapacitated to receive benefits.  [Claimant's] limited daily

2  activities are not in tension with the opinions of his treating providers.") (citation omitted).  For

3  all these reasons, plaintiff's own testimony does not provide a proper basis for rejecting the

4  opinions of Dr. Martell and Dr. Wishnatzky.

5  c. Sporadic visits

6       The other reason the ALJ offers for rejecting Dr. Martell's opinion is that her "sporadic

7  and infrequent record of treatment diminishes her opinion as a treating physician," citing the fact

8  that "Dr. Martell treated the claimant on only 5 occasions prior to the issuance of this medical

9  opinion."  AR 30.  However, during the period Dr. Martell (plaintiff's psychiatrist), was seeing

10  plaintiff only "sporadically," plaintiff's treating psychologist, Dr. Perry, was seeing plaintiff *every*

11  *other week*.  See AR 78 (at July 25, 2012 hearing, plaintiff testifies, "I still see her [Dr. Perry]

12  now"), 341 (as of the September 15, 2010 date of Dr. Perry's report, plaintiff was seeing

13  Dr. Perry "once every 2 weeks"), 413 (on July 17, 2012, Dr. Martell notes that plaintiff

14  "continues to work with Dr. Marilyn Perry, a clinical psychologist").  The ALJ does not explain –

15  and no reason is evident – why such occasional visits by a treating psychiatrist, when her patient

16  is being seen and treated bi-weekly by a psychotherapist, is insufficient to fully credit the

17  psychiatrist's report.[20]

18       Plaintiff's "sporadic" visits to Dr. Martell do not provide a valid basis for rejecting Dr.

19  Martell's opinion.

20       4.  Dr. Finkel's Assessment Does Not Provide Substantial Evidence To Support

21         The ALJ's Findings

22       The mental assessment by Dr. Finkel does not provide substantial evidence for rejecting

23

24

25

26

27

28

---

[20]  The Commissioner's regulations expressly provide for the full consideration of a treating physician's report where the doctor has or had an ongoing treatment relationship with the patient, and saw the patient "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for the medical condition.  20 C.F.R. §§ 404.1502, 416.902. The ALJ identifies nothing in the administrative record or anything else that indicates that Dr. Martell's treatment frequency – spanning a period from December 2010 to July 2012 – was not within the norm for a psychiatrist treating plaintiff's mental conditions, especially when the patient was seeing his psychotherapist every other week.

1    the opinions of Drs. Perry, Martell and Wishnatzky or concluding that plaintiff fails to meet the

2    Listings.  Plaintiff was examined by psychologist Barry N. Finkel, Ph.D. on December 7, 2010.

3    AR 352-56 (Exh. 5F).  Dr. Finkel administered several tests and diagnosed plaintiff with, among

4    other things, Asperger's Disorder, Depressive Disorder NOS, and Panic Disorder without

5    agoraphobia.  AR 355.  Dr. Finkel did not complete a formal assessment of plaintiff.  Instead,

6    Dr. Finkel wrote a report and informally summarized particular issues relevant to severity of the

7    impairments and the consequent limitations.  In this context, he found that plaintiff's interactions

8    with others, such as supervisors and peers, "are likely to be markedly impaired at least over a

9    longer term."  AR 356.  Dr. Finkel found that plaintiff "is able to groom and dress himself

10   appropriately," "can follow simple and detailed instructions," "should be able to attend to and

11   follow through on simple and detailed tasks without direct supervision," that his "attention span is

12   within normal limits," that his "concentration is mildly impaired," his "pace may be mildly

13   impaired," and that "his ability to work over an eight-hour day and attend to a regular work

14   schedule is considered at least moderately impaired."  AR 356.

15       Dr. Finkel's report does comment on a small subset of abilities, noting that plaintiff does

16   "his own grocery shopping and cooking," and can "groom and dress himself appropriately."

17   AR 353, 356.  He also states that plaintiff "eats breakfast, watches TV, and plays video games,"

18   and "has a microwave and mini fridge."  AR 353.  The ALJ apparently concluded from this that

19   "Dr. Finkel reported the claimant is independent in activities of daily living."  AR 23.

20       In fact, Dr. Finkel does not report this.  Most importantly, he does not state whether, in his

21   opinion, plaintiff has no limitations, or has "marked," "moderate," or "mild" limitations in that

22   area.  There is simply no way to tell from Dr. Finkel's mention of these few abilities how he

23   would rate all of plaintiff's "adaptive  activities," which include "cleaning, shopping, cooking,

24   taking public transportation, paying bills, maintaining a residence, caring appropriately for your

25   grooming and hygiene, using telephones and directories, and using a post office."  See Listings

26   ¶ 12.00B(1).  Even within the activities mentioned by Dr. Finkel, there is no way to tell how he

27   would "assess the quality of these activities by their independence, appropriateness, effectiveness

28   and sustainability."  See Listings ¶ 12.00B(1).  For example, although Dr. Fink states that plaintiff

takes care of his own shopping, he later notes that plaintiff reports "problematic, impulsive behavior," including entirely inappropriate behavior at the grocery, where he unaccountably "found himself yelling at a bagger not to touch his groceries . . . though there was nothing wrong with what she had been doing."  AR 354.

In summary, while Dr. Finkel's observations are relevant to a comprehensive picture of plaintiff's abilities, they are not sufficient, alone or together with plaintiff's testimony or any other objective evidence, to reject the opinions of Drs. Perry, Martell and Wishnatzky or to conclude that plaintiff fails to meet or equal the Listings.

C.  Remand

What remains to be determined is whether this matter should be remanded for further proceedings or for an immediate calculation and award of benefits to plaintiff.  The court recognizes that a remand for an immediate award of benefits is appropriate "only in 'rare circumstances.'"  Brown-Hunter v. Colvin, ___ F.3d ___, 2015 WL 4620123 at *7, 2015 U.S. App. LEXIS 13560 at *20 (9th Cir. 2015) (quoting Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014)).  However, all three requirements for doing so are met in this case.

First, "the ALJ has failed to provide legally sufficient reasons" for rejecting the medical opinions of Dr. Perry, Dr. Martell and Dr. Wishnatzky.  See Garrison, 759 F.3d at 1020.  Indeed, he provided no reason for rejecting Dr. Perry's opinion, since he does not mention it or acknowledge its existence, and no valid reason for rejecting the opinions of Dr. Martell or Dr. Wishnatzky.

Second, "the record has been fully developed and further administrative proceedings would serve no useful purpose."  Id.  This requirement is met here because the ALJ's error was not in failing to develop the record, but in failing to consider the treating physician's opinion that was already in the record, and failing to credit the opinions, already in the record, of Dr. Martell and Dr. Wishnatzky.

Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  Id. at 1021.  As discussed above, if the three

1  doctors' opinions were credited as true, the ALJ would be required to find that: (1) plaintiff

2  suffered from Affective Disorders,[21] Anxiety Related Disorders[22] and Personality Disorders,[23]

3  and met the severity levels specified by the "A" series for each of these disorders, see 12.04A,

4  12.06A, 12.08A; and (2) plaintiff met the severity levels specified by the "B" series for these

5  disorders, see 12.04B, 12.06B, 12.08B.  The ALJ would therefore be required to find that plaintiff

6  was disabled at Step 3 of the sequential evaluation.  See 20 C.F.R. §§ 404.1520(a)(4)(iii),

7  1520(d), 416.920(a)(4)(iii), 416(d).

8       Even with these findings, the court retains "flexibility" in determining the appropriate

9  remedy.  Garrison, 759 F.3d at 1021 ("'flexibility' is properly understood as requiring courts to

10  remand for further proceedings when, even though all conditions of the credit-as-true rule are

11  satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

12  disabled").  Despite this flexibility, the district court abuses its discretion if it remands for further

13  proceedings "where the credit-as-true rule is satisfied and the record afforded no reason to believe

14  that . . . [the plaintiff] is not, in fact, disabled."  Id.

15       This record leaves no doubt that the plaintiff is disabled, and should have been found so at

16  Step 3.  All three treating and examining physicians that completed a formal assessment found

17  plaintiff's impairments to be severe enough to be disabling according to the Listings.  Nothing in

18  the testimony or objective evidence refutes these findings.

19                          VII.  CONCLUSION

20       For the reasons set forth above, IT IS HEREBY ORDERED that:

21       1.  Plaintiff's motion for summary judgment (ECF No. 18), is GRANTED;

22       2.  The Commissioner's cross-motion for summary judgment (ECF No. 19), is DENIED;

23       3.  This case is REMANDED to the Commissioner for the immediate calculation and

24  award of benefits to plaintiff; and

25  ////

26  _____

27  [21] Dr. Perry, Dr. Martell, Dr. Wishnatzky.
   [22] Dr. Perry, Dr. Martell.

28  [23] Dr. Perry.

1          4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

2     DATED: September 11, 2015

3                                                          _____
                                                          ALLISON CLAIRE
4                                                         UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28